Vera Punin v. Garland

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2023
No. 22-6275

MAXIMO ROBERT VERA PUNIN,
*Petitioner*,

*v.*

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
*Respondent.*

---

On Petition for Review of a Final Decision of the Board of
Immigration Appeals

---

ARGUED: MARCH 4, 2024
DECIDED: JULY 16, 2024

---

Before: WALKER, NARDINI, and MENASHI, *Circuit Judges*.

---

Petitioner Maximo Robert Vera Punin seeks review of a decision of the Board of Immigration Appeals affirming a decision of an Immigration Judge that ordered his removal. The agency found that Vera Punin's alienage was established by clear and convincing

evidence based on a Form I-213, a record prepared by immigration officials when initially processing a person suspected of being illegally present in the United States. Vera Punin contends that the agency did not adequately explain why the I-213 established his alienage; that the I-213 was improperly considered and "inadequate as a matter of law" to prove he was a foreign citizen; that the agency's treatment of the I-213 as presumptively reliable subverted the allocation of burdens among the parties; and that the temporary Appellate Immigration Judge who decided his appeal on behalf of the Board lacked authority to do so.

We conclude that (1) Vera Punin did not exhaust his argument that the agency failed to explain its reasoning, and so we lack authority to consider this claim; (2) the agency properly considered Vera Punin's I-213 because it is presumptively reliable and capable of proving alienage by clear and convincing evidence, and Vera Punin did not rebut that presumption by providing any evidence to dispute the accuracy of the I-213's contents or to show that the information in the report was obtained by coercion or duress; (3) the presumption of reliability afforded to an I-213 does not impermissibly shift the burden of proof away from the government; and (4) the temporary Appellate Immigration Judge was properly appointed by the Attorney General by the authority vested in him under 8 U.S.C. § 1103(g)(1). Accordingly, we DENY IN PART and DISMISS IN PART the petition for review.

———————————

RAFAEL MORENO, Rule 46.1(e) Law Student (Aadhithi Padmanabhan, Supervising Attorney, Alexis Turner-Lafving, Rule 46.1(e) Law Student, Hannah Wardell, Rule 46.1(e) Law Student, *on the brief*), Federal Appellate Immigration Clinic, University of

Maryland Carey School of Law, Baltimore, MD; John H. Peng, Prisoners' Legal Services of New York, Albany, NY, *for Petitioner*.

CHRISTOPHER G. GIEGER (Brian M. Boynton, Principal Deputy Assistant Attorney General, Kohsei Ugumori, Senior Litigation Counsel, Sarah K. Pergolizzi, Senior Litigation Counsel, *on the brief*), Civil Division, U.S. Department of Justice, Washington, DC, *for Respondent*.

Zoe Levine, Jessica Swensen, The Bronx Defenders, Bronx, NY, *for Amici Curiae* The Bronx Defenders, Brooklyn Defender Services, The Legal Aid Society, Make the Road New York, The New York Legal Assistance Group, UnLocal, Inc., *in support of Petitioner*.

---

WILLIAM J. NARDINI, *Circuit Judge*:

Petitioner Maximo Robert Vera Punin, a citizen of Ecuador, was ordered removed by immigration authorities after he was convicted in state court of multiple counts involving his rape of a young child. *In re Maximo Robert Vera Punin*, No. A208 834 568 (B.I.A. May 6, 2022), *aff'g* No. A208 834 568 (Immigr. Ct. Fishkill, N.Y. Dec. 8, 2021). He is

3

presently serving a 25-year prison term and faces deportation upon completion of his sentence. In the meantime, he has brought this action challenging his removal order. Vera Punin does not contest that he has been convicted of crimes that render an alien removable. He is not seeking to revive asylum claims that he abandoned some time ago. He does not even claim to be a United States citizen; his argument is simply that the government committed errors in the course of proving that he's not.

The Department of Homeland Security ("DHS") served Vera Punin with a notice to appear ("NTA") in September 2020, charging him with being a removable alien under various sections of the Immigration and Nationality Act ("INA"). Vera Punin declined to concede that he was not a United States citizen. To prove his alienage, DHS submitted a Form I-213—the official record that immigration officials prepare when initially processing a person suspected of being in the United States without lawful permission. In this case, the

I-213 listed various pieces of information, including checks of numerous government databases, detailed personal information about Vera Punin and his family, his fingerprints, and a recitation of his previous removal from the United States after he (using a false name) was apprehended by the Border Patrol near Mexico. The Immigration Judge ("IJ"), and later the Board of Immigration Appeals ("BIA"), held that the I-213 was admissible and sufficient to prove Vera Punin's alienage by clear and convincing evidence. Relying on this information, the immigration authorities issued an order of removal.

In his petition for review, Vera Punin contends that the agency did not adequately explain why the I-213 established his alienage; that the I-213 was improperly considered and "inadequate as a matter of law" to prove he was a foreign citizen; that the agency's treatment of the I-213 as presumptively reliable subverted the allocation of burdens among the parties; and that the temporary Appellate

5

Immigration Judge who decided his appeal on behalf of the Board of Immigration Appeals did not have authority to do so.

We conclude that (1) Vera Punin did not exhaust his argument that the agency failed to explain its reasoning, and so we lack authority to consider this claim; (2) the agency properly considered Vera Punin's I-213 because it is presumptively reliable and capable of proving alienage by clear and convincing evidence, and Vera Punin did not rebut that presumption by providing any evidence to dispute the accuracy of the I-213's contents or to show that the information in the report was obtained by coercion or duress; (3) the presumption of reliability afforded to an I-213 does not impermissibly shift the burden of proof away from the government; and (4) the temporary Appellate Immigration Judge was properly appointed by the Attorney General by the authority vested in him under 8 U.S.C. § 1103(g)(1). Accordingly, we DENY IN PART and DISMISS IN PART the petition for review.

## I.  Background

According to the Department of Homeland Security, Vera Punin is a native and citizen of Ecuador who unlawfully entered the United States at an unknown date.

### A. Initiation of Removal Proceedings

On September 21, 2016, New York state authorities charged Vera Punin with four crimes related to the sexual abuse of a minor.[1] These charges brought Vera Punin to the attention of DHS, and on August 1, 2017, he was apprehended by immigration officials outside the Suffolk County courthouse.  On December 18, 2017, following a jury trial, Vera Punin was convicted of all four crimes and was

---

[1] Those four charges were: (1) rape in the first degree—sexual intercourse with another person who is less than 11 years old, in violation of N.Y. Penal Law § 130.35.03; (2) criminal sexual act in the first degree with a child who is less than 11 years old, in violation of N.Y. Penal Law § 130.50.03; (3) sexual abuse in the first degree—sexual contact when the other person is less than 11 years old, in violation of N.Y. Penal Law § 130.65.03; and (4) endangering the welfare of a child—acting in a manner likely to be injurious to a child less than 17 years old, in violation of N.Y. Penal Law § 260.10.01.

sentenced principally to 25 years in prison. He began serving his term of imprisonment on January 5, 2018.

On September 24, 2020, DHS served Vera Punin with a notice to appear, which it filed with the immigration court, thereby commencing his removal proceedings. *See* 8 C.F.R. § 1239.1(a). The NTA charged Vera Punin with removability under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled; § 1182(a)(2)(A)(i)(I), as an alien convicted of a crime involving moral turpitude; and § 1182(a)(2)(B), as an alien convicted of two offenses, regardless of whether the offenses involved moral turpitude, where the aggregate sentence was at least five years.

## B. Removal Proceedings

Prior to Vera Punin's initial hearing, DHS submitted several documents to the immigration court, including a Form I-213, a New York state criminal rap sheet, an FBI criminal rap sheet, the conviction record for his 2017 convictions, and a copy of the decision affirming

those convictions by the Second Department of the New York Supreme Court, Appellate Division. Vera Punin objected only to the admission of the I-213.

### 1. The Form I-213

A Form I-213, or a "Record of Deportable/Inadmissible Alien," Certified Admin. Rec. ("CAR") 249, is "an 'official record' prepared by immigration officials when initially processing a person suspected of being in the United States without lawful permission," *Zuniga-Perez v. Sessions*, 897 F.3d 114, 119 n.1 (2d Cir. 2018). Vera Punin's I-213 was prepared on August 1, 2017, the day that immigration officials arrested him outside the Suffolk County courthouse.

Vera Punin's I-213 is three pages long. The first page lists basic identifying information, including Vera Punin's date of birth, height, weight, and address, as well as a headshot photograph and fingerprints from his right and left index fingers. It states that Vera Punin's country of citizenship is Ecuador. The first page also lists the

9

names and nationalities of Vera Punin's wife, mother, and father, who are all listed as having Ecuadorian nationality. Further, under a category for aliases, the I-213 lists the name "ROBERTO LOPEZ, Maximo." CAR 249. The first page is signed by a deportation officer, "J 4313 DICKERSON," and an examining officer, "BANKS, B 1093." *Id.*

The second page of the I-213 lists DHS's then-current charges against Vera Punin, *id.* at 250, which were being an inadmissible alien under Section 212 of the INA, 8 U.S.C. § 1182, and being an alien present without admission or parole under Section 212(a)(6)(A)(i), *id.* § 1182(a)(6)(A)(i). The I-213 then describes Vera Punin's "Previous Criminal History," explaining that he was arrested on September 28, 2016, for "Sex Assault – Carnal Abuse" and "Statutory Rape – No Force," and that those charges were still pending.[2] CAR 250. It also

___

[2] As explained below, the narrative portion of the I-213 correctly identifies the date of Vera Punin's arrest related to the sexual abuse of a minor as September 21, 2016, not September 28. *Compare* CAR 250, *with id.* at 251; *see also id.* at 234 (Vera

10

states that Vera Punin was convicted of driving under the influence on October 16, 2003.

Continuing on the second page, the I-213 lists various government databases under the heading "Records Checked": TECS, NCIC, CLAIM, ATS-P, CIS, EARM, and CCD.[3]  *Id.*  Next to TECS,

---

Punin's New York state criminal rap sheet listing the date of arrest as September 21, 2016).

[3] The record does not indicate what these database acronyms stand for. However, "[t]his Court may take judicial notice of any fact that 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 88 n.2 (2d Cir. 2012) (quoting Fed. R. Evid. 201(b)(2)).  Accordingly, we note that (1) TECS, which derives its name from the former Treasury Enforcement Communications System, "is the principal system used by officers at the border to assist with screening and determinations regarding admissibility of arriving persons." *DHS/CBP/PIA-009(a) – TECS System: CBP Primary and Secondary Processing (TECS) National SAR Initiative*, U.S. Dep't of Homeland Sec. (May 19, 2022), https://www.dhs.gov/publication/tecs-system-cbp-primary-and-secondary-processing-tecs-national-sar-initiative [https://perma.cc/LZN3-7AWP]; *see also DHS/CBP/PIA-021 TECS System: Platform*, U.S. Dep't of Homeland Sec. (Mar. 31, 2023), https://www.dhs.gov/publication/dhscbppia-021-tecs-system-platform [https://perma.cc/7DXJ-HNTV]; (2) NCIC is the National Crime Information Center.  *See National Crime Information Systems*, U.S. Dep't of Just., https://www.justice.gov/tribal/national-crime-information-systems [https://perma.cc/88EM-YJMQ]; (3) CLAIM is the Computer Linked Application Information Management System.  *See DHS/USCIS/PIA-016 Computer Linked Application Information Management System (CLAIMS 3) and Associated Systems*, U.S. Dep't of Homeland Sec. (Mar. 31, 2023), https://www.dhs.gov/publication/dhsuscispia-016-computer-linked-application-information-management-system-claims-3-and [https://perma.cc/4NBJ-5UNM];

NCIC, CIS, and EARM is the notation "Pos," and next to CLAIM, ATS-P, and CCD is the notation "Neg." *Id.* The I-213 lists Vera Punin's arresting agents as "W 4933 RODRIGUEZ," "N 4322 MERCADO," "J 3762 ROTHERMEL," and "D MARINO," and states that Vera Punin had $9.80 in his possession when he was arrested. *Id.* Like the first page, the second page is signed by Deportation Officer Dickerson.

Beginning at the bottom of the second page and continuing on to the third and final page of the I-213 is the narrative portion. It explains that Vera Punin was arrested "without incident" on August

(4) ATS-P is the Automated Targeting System-Passenger. *See DHS/CBP/PIA-006 Automated Targeting System*, U.S. Dep't of Homeland Sec. (Mar. 31, 2023), https://www.dhs.gov/publication/automated-targeting-system-ats-update [https://perma.cc/L2DP-UHND]; (5) CIS is the Central Index System. *See DHS/USCIS/PIA-009 Central Index System*, U.S. Dep't of Homeland Sec. (Mar. 31, 2023), https://www.dhs.gov/publication/dhsuscispia-009-central-index-system [https://perma.cc/P8E4-NNL6]; (6) EARM is the ENFORCE Alien Removal Module. *See DHS/ICE/PIA-015 Enforcement Integrated Database*, U.S. Dep't of Homeland Sec. (Mar. 31, 2023), https://www.dhs.gov/publication/dhsicepia-015h-enforcement-integrated-database-eid-criminal-history-information-sharing [https://perma.cc/4Q67-AQLV]; and (7) CCD is the Consular Consolidated Database. *See Consular Consolidated Database (CCD)*, U.S. Dep't of State (Nov. 2022), https://www.state.gov/wp-content/uploads/2023/05/Consular-Consolidated-Database-CCD-PIA.pdf [https://perma.cc/N33Q-CNHS].

1, 2017, in front of the "Suffolk County Court . . . pursuant to an I-200 Warrant of Arrest" by "Long Island Fugitive Operations" as part of "Operation SOAR," and then transported to Central Islip for processing. *Id.* at 250–51.

The I-213 then describes Vera Punin's "Immigration History," noting that he is a citizen of Ecuador, not the United States, and that he had previously been apprehended in the United States and deported:

> VERA PUNIN is not a national or citizen of the United States. VERA PUNIN is a national and citizen of Ecuador. VERA PUNIN entered the United States at an unknown time and place without being inspected / admitted. VERA PUNIN was apprehended by the Border Patrol on or about October 6, 1999. VERA PUNIN claimed to be a national and citizen of Mexico and used the alias Maximo ROBERTO LOPEZ. VERA PUNIN was voluntarily returned to Mexico. VERA PUNIN re-entered the United States without inspection.

*Id.* Vera Punin's criminal history is then listed again.

The I-213 further describes Vera Punin's family, stating that he "claims to be married," "claims to have three [U.S. citizen] children,"

13

and "claims that the children live with the mother." *Id.* The I-213 further states that Vera Punin "claims to be in good health and is not currently taking medication." *Id.* It also states that upon apprehension, Vera Punin, when given the opportunity to place a phone call, called his sister; was offered a meal; and was given the opportunity to contact the consulate of Ecuador. Like the first two pages, the last page of the I-213 is signed by Deportation Officer Dickerson.

### 2. Proceedings Before the Immigration Judge

At Vera Punin's initial hearing on November 4, 2020, the IJ received Vera Punin's NTA into the record. Vera Punin's lawyers indicated, however, that they needed more time to review DHS's various documentary submissions, such as the I-213 and criminal rap

sheets, and the IJ accordingly adjourned the hearing until January 13, 2021.

At the hearing on January 13, Vera Punin's counsel objected to the admission of the I-213, arguing that it did not identify the sources of its information. The IJ admitted the I-213 over Vera Punin's objection, explaining that there is "case law as to the presumptive reliability of the I-213," and that he would give it "the appropriate weight." CAR 69–70. Vera Punin then entered his plea denying Allegations 1 through 4 and admitting Allegations 5 through 8 in the NTA. Allegations 1 through 4 alleged that Vera Punin is "not a citizen or national of the United States"; that he is "a native of Ecuador and citizen of Ecuador"; that he "arrived in the United States at or near an unknown place, on or about an unknown date"; and that he was "not then admitted or paroled after inspection by an Immigration Officer." *Id.* at 282. Allegations 5 through 8 alleged that Vera Punin was convicted in 2017 of the four crimes related to sexual abuse of a minor.

Having admitted the I-213, the IJ found that Vera Punin's alienage had been established and, accordingly, sustained Allegations 1 through 4. The IJ also sustained Allegations 5 through 8 based on the record and Vera Punin's admission to those Allegations. The IJ then sustained all three charges of removability against Vera Punin pursuant to Sections 212(a)(6)(A)(i), (a)(2)(A)(i)(I), and (a)(2)(B) of the INA, 8 U.S.C. §§ 1182(a)(6)(A)(i), (a)(2)(A)(i)(I), (a)(2)(B). Vera Punin's counsel indicated that he would apply for asylum and related protection from removal.

On March 5, 2021, Vera Punin submitted an application for asylum and related protection from removal, which he withdrew on September 9, 2021. On September 13, 2021, Vera Punin filed a motion to terminate his proceedings. In the motion, Vera Punin renewed his objections to the I-213's admissibility, arguing that the document contained indicia of unreliability because, among other things, it did not identify any source of its information. Vera Punin did not proffer

16

any evidence contradicting any aspect of the I-213. He further argued that even if the I-213 were admissible, it did not establish his alienage by clear and convincing evidence. DHS opposed Vera Punin's motion.

On December 8, 2021, the IJ, through an oral decision, denied Vera Punin's motion to terminate proceedings. The IJ reasoned that, to be admissible, a Form I-213 does not need to "expressly state the specific source of information for respondent's alienage." CAR 47. The IJ further explained that a "Form I-213 is a record routinely prepared by DHS officers in the course of their duties," and that the officers rely on "numerous sources" in creating the document, such as "computer databases" and "fingerprint comparisons." *Id.* Thus, "absent any proof that an I-213 contains information which is incorrect or which is obtained by coercion or force, the form is inherently trustworthy and admissible." *Id.* (citing *Matter of Mejia*, 16 I. & N. Dec. 6, 8 (B.I.A. 1976)).

The IJ further noted that Vera Punin's fingerprints were taken and that the I-213 indicated that various records had been checked, with four databases—TECS, NCIC, CIS, and EARM—coming back positive. In addition, Vera Punin appeared to provide some information about his family and health, and according to the Immigration History, he previously claimed to be a citizen of Mexico using the alias Maximo Roberto Lopez. Thus, the IJ reasoned that "there appear[ed] to be numerous sources of information that DHS Officer Dickerson relied on when creating the Form I-213," and the I-213 should not be excluded just because "a DHS officer does not expressly state how he or she learned of respondent's alienage." *Id.* at 48. Further, Vera Punin had not shown—or even argued—that any information contained in the I-213 "was false, inaccurate, or was obtained through improper means." *Id.* Accordingly, the IJ admitted the I-213 into evidence and found it sufficient to establish Vera Punin's alienage, although the IJ did not expressly state under what

standard of proof he was evaluating the evidence. With alienage established, the IJ sustained the charges of removability, and given that Vera Punin had withdrawn his application for asylum and related protection from removal, ordered Vera Punin removed to Ecuador.

### C. Proceedings Before the Board

Vera Punin timely appealed to the BIA, raising substantially the same arguments as he did before the IJ. He argued that the I-213 was unreliable and should not have been admitted into evidence because he himself was not the source for information regarding his alienage. In addition, Vera Punin argued that even if admissible, the I-213 was not sufficient to establish his alienage by clear and convincing evidence.

On May 6, 2022, a "temporary Appellate Immigration Judge[]," also called a "temporary Board member," 8 C.F.R § 1003.1(a)(4), Elise Manuel, adopted and affirmed the IJ's December 8, 2021, decision.

The BIA explained that "[a]bsent evidence that a Form I-213 contains information that is incorrect or was obtained by coercion or duress, that document is considered 'inherently trustworthy' and admissible as evidence to prove alienage or deportability." CAR 4 (quoting *Matter of Ponce-Hernandez*, 22 I. & N. Dec. 784, 785 (B.I.A. 1999)). Because Vera Punin did not allege that any information in his I-213 was incorrect or obtained by coercion and duress, the BIA held that the IJ properly admitted the I-213 into evidence and "that DHS met its burden of establishing [Vera Punin's] alienage, by clear and convincing evidence, based on the contents of the Form I-213." *Id.*

This petition for review followed.

## II. Discussion

This Court's jurisdiction is limited by 8 U.S.C. § 1252(a)(2)(C), which provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed" certain criminal offenses, including a crime involving moral turpitude, or two or more offenses with aggregate

20

sentences of five years or more.  Vera Punin, having qualifying convictions, concedes that § 1252(a)(2)(C) applies to him.  However, § 1252(a)(2)(D) further provides that § 1252(a)(2)(C) "shall [not] be construed as precluding review of constitutional claims or questions of law raised upon a petition for review."  *Accord Alvarez v. Garland*, 33 F.4th 626, 637 (2d Cir. 2022).  Accordingly, this Court may still review constitutional claims and questions of law raised in Vera Punin's petition for review, which we review *de novo*, *Dale v. Barr*, 967 F.3d 133, 138 (2d Cir. 2020).  Where, as here, "the BIA adopts the decision of the IJ and merely supplements the IJ's decision, . . . we review the decision of the IJ as supplemented by the BIA."  *Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005).

### A. Alienage

Whether a respondent is a United States citizen is a threshold issue in removal proceedings, and DHS bears the burden of establishing an individual's alienage by clear and convincing

evidence.  8 U.S.C. § 1229a(c)(3)(A); 8 C.F.R. § 1240.8(c) ("In the case of a respondent charged as being in the United States without being admitted or paroled, the Service must first establish the alienage of the respondent."); *see also Woodby v. INS*, 385 U.S. 276, 286 (1966) (holding that "no deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true").  Evidence meets the clear and convincing standard if it "place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (citation omitted); *see Jimenez v. Stanford*, 96 F.4th 164, 190 (2d Cir. 2024).  Once DHS proves alienage, the burden shifts to the alien to prove the time, place, and manner of his entry into the United States, which, depending on the circumstances, might entitle him to remain lawfully in the country.  *See* 8 U.S.C. § 1361.  "If such burden of proof is not

sustained, [the alien] shall be presumed to be in the United States in violation of law." *Id.*

### 1. Reasoned Decision-Making

Vera Punin first argues that, at minimum, his petition for review should be granted because the IJ did not adequately explain why the I-213 established Vera Punin's alienage by clear and convincing evidence, failing to even mention the clear and convincing standard as the relevant standard of proof. The government responds that Vera Punin did not administratively exhaust this argument before the BIA. We agree with the government.

"Before a petitioner can seek judicial review of his removal decision, the INA requires that he exhaust all administrative remedies available to him." *Ojo v. Garland*, 25 F.4th 152, 160 (2d Cir. 2022); *see* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . (1) the alien has exhausted all administrative remedies available to the alien as of right . . . .")). "Statutory exhaustion

requirements such as § 1252(d)(1) are 'mandatory, and courts are not free to dispense with them.'" *Foster v. INS*, 376 F.3d 75, 77 (2d Cir. 2004) (quoting *United States v. Gonzalez-Roque*, 301 F.3d 39, 47 (2d Cir. 2002)); *cf. Steevenez v. Gonzales*, 476 F.3d 114, 117 (2d Cir. 2007) ("[W]hile not jurisdictional, issue exhaustion is mandatory.").

"To preserve an issue for judicial review, the petitioner must first raise it with specificity before the BIA." *Steevenez*, 476 F.3d at 117. To be sure, "this Court will not limit the petitioner 'to the exact contours of his argument below' in determining whether the petitioner exhausted the issue . . . ." *Id.* (quoting *Gill v. INS*, 420 F.3d 82, 86 (2d Cir. 2005)). A petitioner may still raise an issue on appeal if it is "either a 'specific, subsidiary legal argument' or 'an extension of an argument raised directly before the BIA.'" *Id.* (quoting *Gill*, 420 F.3d at 86) (alterations incorporated). But when an argument made to this Court cannot be closely matched up with a specific argument

made to the BIA, it has not been properly exhausted and we cannot hear it.

Vera Punin did not exhaust his argument that the IJ failed to articulate the relevant standard of proof or explain why the I-213 satisfied that standard of proof to establish his alienage. Vera Punin argued before the BIA that the IJ "erred" in both admitting the I-213 and finding that it satisfied DHS's burden of proof to establish his alienage. CAR 14, 21. But a claim that the IJ *made the wrong decision* is not equivalent to the argument that the IJ *failed to explain his decision*. Nor can Vera Punin's argument that the IJ did not engage in reasoned decision-making be considered just a slightly re-framed "extension" of the claims he raised before the Board. *Gill*, 420 F.3d at 86. A claim of error does not necessarily suggest that the reviewing court cannot discern the reasons for the lower court's decision, and Vera Punin did not otherwise suggest before the Board that the IJ's reasoning was deficient in that sense. Further, Vera Punin did not argue to the BIA

25

that the IJ failed to explicitly state the relevant standard of proof that DHS must meet to prove his alienage (which the BIA articulated in any event). *See id.* at 4. We accordingly dismiss these unexhausted aspects of Vera Punin's petition.[4]

## 2. Admissibility of the I-213

Vera Punin further argues that the "government failed to produce evidence that could, as a matter of law, meet the clear and convincing standard of proof" necessary to establish his alienage. Petitioner's Br. at 26. Vera Punin now disclaims that he contests the I-213's "admissibility," contrary to his arguments before the agency, and contests only whether the I-213 provided clear and convincing evidence of his alienage. Nonetheless, in substance, the arguments that Vera Punin now makes go essentially to the propriety of the

---

[4] Vera Punin argues that he was not required to exhaust this argument, because he challenges similar deficiencies of reasoning in the BIA's decision, and a petitioner need not exhaust a claim that the BIA itself erred. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 424–25 (2023). But this argument fails. Vera Punin cannot now fault the BIA for failing to offer a more lengthy explanation than did the IJ, when he never complained to the BIA about the level of detail in the IJ's decision to begin with.

agency's consideration of the I-213. Accordingly, we construe Vera Punin's petition for review as a due process challenge to the admissibility of evidence, which we have jurisdiction to review under 8 U.S.C. § 1252(a)(2)(D). *See, e.g.*, *Felzcerek v. INS*, 75 F.3d 112, 115 (2d Cir. 1996).

"[A]gencies are not courts." *Garcia v. Garland*, 64 F.4th 62, 70 (2d Cir. 2023). And so, "[t]he Federal Rules of Evidence do not apply in removal proceedings . . . ." *Zerrei v. Gonzales*, 471 F.3d 342, 346 (2d Cir. 2006). Rather, "[e]vidence is admissible provided that it does not violate the alien's right to due process of law." *Lin v. U.S. Dep't of Just.*, 459 F.3d 255, 268 (2d Cir. 2006). And "[t]he due process test for admissibility of evidence in a deportation hearing is whether the evidence is probative and whether its use is fundamentally fair." *Felzcerek*, 75 F.3d at 115 (quotation marks omitted); *see also Matter of Ponce-Hernandez*, 22 I. & N. Dec. at 785 (similar).

In this context, a Form I-213 is "properly characterized as hearsay" because it is "offered to prove the truth of the statements contained therein"—as relevant here, that the subject of the form is an alien. *Felzcerek*, 75 F.3d at 115. We have concluded that an I-213 "evidence[s] strong indicia of reliability" because it is a "record[] made by public officials in the ordinary course of their duties," and "public officials are presumed to perform their duties properly and generally lack a motive to falsify information." *Id.* at 116. In other words, a "Form I-213 contain[s] guarantees of reliability and trustworthiness that are substantially equivalent to those required of documents admissible under [Federal] Rule [of Evidence] 803(8)," or public records that are not excluded by the rule against hearsay. *Id.*; *see* Fed. R. Evid. 803(8). Accordingly, we have explained that a Form I-213 is "presumptively reliable and can be admitted in deportation proceedings without giving the alien the opportunity to cross-examine the document's author, at least when the alien has put forth

28

no evidence to contradict or impeach the statements in the report."[5]

*Felzcerek*, 75 F.3d at 117; *see also Matter of Gomez-Gomez*, 23 I. & N. Dec. 522, 524 (B.I.A. 2002) ("[A]bsent any evidence that a Form I-213 contains information that is inaccurate or obtained by coercion or duress, that document, although hearsay, is inherently trustworthy and admissible as evidence to prove alienage or deportability."); *Matter of Ponce-Hernandez*, 22 I. & N. Dec. at 785 (similar); *Matter of Barcenas*, 19 I. & N. Dec. 609, 611 (B.I.A. 1988) (similar); *Matter of Mejia*, 16 I. & N. Dec. at 8 (similar).  If, however, "the reliability of the form is somehow undermined," further scrutiny is required, including possibly requiring the officer who completed the I-213 to testify. *Felzcerek*, 75 F.3d at 117.

---

[5] *Amici* offer anecdotes purportedly demonstrating that Forms I-213 sometimes contain inconsistent or otherwise unreliable information—though in nearly all of these cases, *amici* do not claim that the subjects described in those reports were actually U.S. citizens.  These isolated narratives do not establish the sort of systematic defects that might suggest as a general matter that the admission of Forms I-213 in removal proceedings is fundamentally unfair.

Vera Punin argues that the BIA has considered an I-213 to be "inherently trustworthy" only when the subject of the I-213 directly admitted his alienage to the officer preparing the I-213, which Vera Punin did not do. Instead, he contends that the information in his I-213 comes from unknown or unreliable third-party sources, such as the information regarding his apprehension under the alias Maximo Roberto Lopez by an unnamed Border Patrol agent in 1999. But Vera Punin misreads the BIA's precedent. The BIA has "consistently held" that an I-213 is generally considered "inherently trustworthy and admissible as evidence to prove alienage or deportability" unless it has been shown that the information is inaccurate or was obtained by coercion or duress. *Matter of Gomez-Gomez*, 21 I. & N. Dec. at 524. An I-213 contains information from a multitude of sources. The BIA has not limited the presumption of an I-213's reliability to instances where the alleged alien has directly admitted his alienage to the officer preparing the form. And this Court has agreed with the BIA,

explaining that an I-213 is considered presumptively reliable because it is prepared by a public official in the ordinary course of his duties, with the presumption of regularity that entails. *Felzcerek*, 75 F.3d at 116.

To be sure, there might be unusual circumstances in which an alleged alien need not bring forth evidence to undermine an I-213's presumed reliability. It is conceivable that a particular I-213 might be so irregular as to be "facially deficient," which "would render it inadmissible." *Matter of Ponce-Hernandez*, 22 I. & N. Dec. at 786. Contrary to Vera Punin's assertion, however, his I-213 is not remotely so deficient. The I-213 includes several indicia of trustworthiness, including that (1) it includes Vera Punin's photo and fingerprints; (2) it identifies the official government databases that were searched, and which came back with positive results; (3) it reflects that Vera Punin was interviewed and gave responses about his family and health; (4) it identifies Vera Punin as having been previously apprehended and

31

removed to Mexico in 1999 under the name Maximo Roberto Lopez

(and having claimed to be a Mexican citizen); and (5) each page is

signed by Deportation Officer Dickerson.  By mentioning these

indicators, of course, we do not suggest that any particular indicators

(much less any combination of them) are required in any given case.

The point is simply that this I-213 bears the usual hallmarks of

regularity.  And it is highly probative of Vera Punin's alienage

because it clearly reports that he is a citizen of Ecuador, not of the

United States.  Further, as has been noted, Vera Punin did not provide

any evidence to dispute the accuracy of the information in his I-213 or

claim that it was obtained through improper means, such as coercion

or duress.  Accordingly, the agency properly admitted the I-213 into

evidence as a reliable document.  And once the I-213 was admitted as

evidence, the agency was free to rely upon it when determining that

there was clear and convincing evidence of Vera Punin's alienage.

*See, e.g.*, *Barradas v. Holder*, 582 F.3d 754, 764 (7th Cir. 2009) (holding

that a Form I-213 "constitute[d] reasonable, substantial, and probative evidence" of the petitioner's conviction listed on the form); *Matter of Gomez-Gomez*, 23 I. & N. Dec. at 524 ("[A] Form I-213 is admissible and ordinarily sufficient for a prima facie case of deportability . . . ." (quotation marks omitted)).[6]

### 3. Burden of Proof

Vera Punin further argues that the presumption of reliability afforded an I-213—and the concomitant obligation on the alleged alien to bring forth evidence to rebut that presumption—subverts the proper allocation of burdens in removal proceedings. The

---

[6] This Court has not decided the scope of review that applies to an agency finding that DHS met its burden of proving alienage. If, as appears likely, Vera Punin's alienage is a question of fact that is generally reviewable for substantial evidence, then pursuant to 8 U.S.C. § 1252(a)(2)(C), we would not have jurisdiction to review that determination in this case because Vera Punin was ordered removed due to his criminal convictions pursuant to 8 U.S.C. § 1182(a)(2). *See* 8 U.S.C. § 1252(a)(2)(C). We need not reach this question, however, because we understand Vera Punin to argue only that his I-213 was inherently unreliable and therefore not permissibly considered, a problem that he somewhat imprecisely describes as the I-213 being "inadequate as a matter of law." Petitioner's Br. at 26. We do not read his brief as challenging the ultimate (and likely unreviewable) question of whether the agency carried its burden of proof.

government again contends that Vera Punin did not exhaust this argument before the Board, but here we disagree. Vera Punin argued before the Board that the IJ "misappl[ied] the burden of proof and production" and that "only once DHS has met its burden of proving alienage is there any burden on the Respondent." CAR 20 n.3. Accordingly, Vera Punin raised the issue of the allocation of burdens with the requisite "specificity" before the BIA to exhaust the issue. *Steevenez*, 476 F.3d at 117.

On the merits, however, Vera Punin's argument is unpersuasive. He conflates two distinct concepts: the burden of proof and the burden of production. The burden of proof refers only to the ultimate burden of persuasion. *See Dir., Off. of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 275–76 (1994). "The burden of proof is the obligation which rests on one of the parties to an action to persuade the trier of the facts . . . of the truth of a proposition which he has affirmatively asserted by the pleadings." *Id.*

34

at 275 (quoting W. Richardson, Evidence 143 (6th ed. 1944)). In contrast, the burden of production is "a party's obligation to come forward with evidence to support its claim." *Id.* at 272.

In removal proceedings, the *burden of proof* is on the government to establish that "the facts alleged as grounds for deportation," including alienage, are true by "clear, unequivocal, and convincing evidence." *Woodby*, 385 U.S. at 286. "The burden of proof in a litigation, wherever the law has placed it, does not shift with the evidence . . . ." *Com. Molasses Corp. v. N.Y. Tank Barge Corp.*, 314 U.S. 104, 110 (1941); *see also Pereida v. Wilkinson*, 592 U.S. 224, 240 (2021) (explaining that when the burden of proof is on the government, "evidentiary gaps work against the government"). It is possible, however, for the *burden of production* to shift, particularly where it has been established that the factfinder may draw a "permissible inference"—sometimes labeled with the more "equivocal term

'presumption'"—from certain evidence. *Com. Molasses*, 314 U.S. at 111.

In removal proceedings, it is permissible for the agency to infer that the contents of an I-213 are reliable and therefore support a finding of fact by clear and convincing evidence. *See Felzcerek*, 75 F.3d at 116. Such an inference "does no more than require" the alleged alien, "if he would avoid the inference, to go forward with evidence" of "the non-existence of the fact, which would otherwise be inferred," *Com. Molasses*, 314 U.S. at 111—namely, his alienage—sufficient to undermine a finding by clear and convincing evidence. This shift in the burden of production "does not cause the burden of proof to shift." *Id.* Indeed, if the alleged alien "does go forward with evidence enough to raise doubts as to the validity of the inference, which the trier of fact is unable to resolve, the [government] does not sustain the burden of persuasion, . . . where it rested at the start." *Id.* Accordingly, the presumption of reliability afforded to I-213s, and the

36

corresponding shift in the burden of production it imposes, does not impermissibly shift the burden of proof away from the government, where it always remains.

## B. Temporary Board Member

Lastly, Vera Punin argues that the temporary Board member who decided his appeal, Elise Manuel, did not have authority to do so because she was appointed in violation of the BIA's regulations. More specifically, Vera Punin contends that Manuel was appointed pursuant to 8 C.F.R. § 1003.1(a)(4), which, at the time she was appointed, provided that the Director of the Executive Office for Immigration Review ("EOIR") could "designate" certain people (including IJs, and retired IJs and BIA members, among others) "to act as temporary Board members for terms not to exceed six months." 8 C.F.R. § 1003.1(a)(4) (2021).[7] According to Vera Punin, based on the

---

[7] On April 2, 2024, § 1003.1(a)(4) was revised to say that "[u]pon the recommendation of the [EOIR] Director, the Attorney General may in his discretion appoint" certain people "to serve as temporary Board members for renewable terms not to exceed six months." 8 C.F.R. § 1003.1(a)(4) (Apr. 2, 2024).

regulation's text, structure, history, and purpose, it limited a temporary Board member to serving only one six-month term, but when Manuel decided his appeal, she had been serving for over three years as a temporary Board member.

Whether Manuel was properly appointed is a question of law that we have jurisdiction to review. *See generally Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 326 (2d Cir. 2006) (discussing "questions of law" under § 1252(a)(2)(D)). Further, Vera Punin was not required to file a motion for reconsideration to exhaust this issue, which arose in the first instance out of the Board's decision. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 424–25 (2023).

Vera Punin's argument misses the mark because Manuel was not appointed by the EOIR Director pursuant to 8 C.F.R. § 1003.1(a)(4). Rather, she was appointed by the Attorney General "[b]y the authority vested in [him] . . . under 8 U.S.C. § 1103(g)(1)." Government's Br. add. (Off. of the Att'y Gen., Order No. 5235-2021,

Appointing Elise M. Manuel as a Temporary Appellate Immigration Judge for a Six-Month Term (Nov. 20, 2021)).[8]

The INA provides that the Attorney General has the "authorities and functions" that were exercised by EOIR or by the Attorney General with respect to EOIR prior to the transfer of the Immigration and Naturalization Service's functions to other agencies under the Immigration Reform, Accountability and Security Enhancement Act of 2002. 8 U.S.C. § 1103(g)(1). The Attorney General's powers include appointing appellate immigration judges to serve as members of the BIA. *See id.* § 1103(g)(2) (providing that the Attorney General "shall . . . delegate such authority . . . as the Attorney General determines to be necessary for carrying out this section"); *id.* § 1101(b)(4) (assigning the Attorney General authority to appoint administrative judges within the Executive Office for

---

[8] We may take judicial notice of Manuel's appointment paperwork that the government provided in an addendum to its brief. *See Louis Vuitton*, 676 F.3d at 88 n.2.

Immigration Review); 8 C.F.R. § 1003.0(a) ("EOIR shall include the Board of Immigration Appeals . . . ."). Thus, in appointing Manuel, the Attorney General relied on the broad powers to carry out the immigration laws that Congress vested in him under 8 U.S.C. § 1103(g)(1); he referenced 8 C.F.R. § 1003.1(a)(4) in the appointment order not as a source of his authority to appoint Manuel, but to describe the role he was appointing Manuel to perform. *See* Government's Br. add. ("I hereby appoint Elise M. Manuel as a temporary Appellate immigration Judge of the Board of Immigration Appeals, *as described in* 8 C.F.R. § 1003.1(a)(4) . . . ." (emphasis added)); *accord Medina Carreon v. Garland*, 71 F.4th 247, 253–54 (5th Cir. 2023) (rejecting a similar challenge to the propriety of two temporary Board members' appointments, noting that the appointment paperwork, of which the court took judicial notice, "substantiate[d] the Government's assertion that the temporary BIA members were reappointed by the Attorney General" pursuant to his

authority).  Accordingly, Manuel was properly appointed to the BIA

and therefore had authority to decide Vera Punin's appeal on behalf

of the BIA.[9]

Nor was the Attorney General constrained by

8 C.F.R. § 1003.1(a)(4) in exercising his statutory authority.  Had the

Attorney General promulgated rules delimiting his own authority, he

could not later "sidestep" those limitations.  *United States ex. rel.*

---

[9] In its brief, the government responded to Vera Punin's argument by arguing that the text, structure, history, and purpose of 8 C.F.R. § 1003.1(a)(4) allowed a temporary Board member to serve more than one six-month term.  Only at oral argument did the government raise the argument that Manuel was appointed by the Attorney General by the authority generally vested in him under 8 U.S.C. § 1103(g)(1), and not pursuant to the cited regulation.  *See* Oral Argument Audio Recording at 12:15–13:20, *Vera Punin v. Garland*, No. 22-6275 (2d Cir. Mar. 4, 2024).  Normally, an argument raised for the first time at oral argument is deemed forfeited.  *See, e.g.*, *United States v. Cedeno*, 644 F.3d 79, 83 n.3 (2d Cir. 2011).  However, the government's brief did point out that the temporary Board member involved in the present case was appointed by the Attorney General (a fact that is now undisputed) and cited § 1103(g)(1), in response to Vera Punin's opening brief, which was premised on the incorrect assumption that she had been appointed by the EOIR Director.  We need not decide whether the government forfeited its specific argument regarding the Attorney General's statutory authority, because in any event we would exercise our authority to consider it.  *See Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 53 (2d Cir. 2012) (explaining that "[w]e are more likely to exercise our discretion to consider" a forfeited argument "when the issue is purely legal and there is no need for additional fact finding" (internal quotation marks and citation omitted)).

*Accardi v. Shaughness*y, 347 U.S. 260, 267 (1954); *see Montilla v. I.N.S.*, 926 F.2d 162, 166–67 (2d Cir. 1991) (discussing "the *Accardi* doctrine"). But the regulation applied to the EOIR Director, not the Attorney General. That provision enabled "[t]he *Director . . .* in his discretion [to] designate" temporary Board members "for terms not to exceed six months." 8 C.F.R.§ 1003.1(a)(4) (2021) (emphasis added). In some circumstances, § 1003.1(a)(4) subjected that discretion to "the approval of the Deputy Attorney General." *Id.* But it nowhere cabined the Attorney General's authority. Thus, the Attorney General remained free to delegate his statutory authority to temporary Board Members, free from § 1003.1(a)(4)'s strictures. *See* 8 U.S.C. § 1103(g)(2); 8 C.F.R.§ 1003.1(a)(1) (2021).

## III. Conclusion

In sum, we hold as follows:

1. We lack authority to review Vera Punin's argument that the IJ failed to adequately explain why the government's proof established his alienage, because he failed to administratively exhaust that claim.

42

2. The agency did not violate Vera Punin's due process rights by considering the I-213, because an I-213 is presumptively reliable and admissible to prove alienage by clear and convincing evidence, and Vera Punin did not rebut that presumption by providing evidence disputing the accuracy of the I-213's contents or showing that the information was obtained by coercion or duress.

3. The presumption of reliability afforded to an I-213 does not impermissibly shift the burden of proof away from the government.

4. The temporary Board member who decided Vera Punin's administrative appeal was properly appointed by the Attorney General based on the broad powers to carry out the immigration laws that Congress vested in him under 8 U.S.C. § 1103(g)(1).

Accordingly, the petition for review is DENIED IN PART and DISMISSED IN PART.