24-667
Baldiviezo Castro v. Bondi

BIA
Ling, IJ
A246 757 828/829/830

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of November, two thousand twenty-five.

PRESENT:
> DENNIS JACOBS,
> PIERRE N. LEVAL,
> RAYMOND J. LOHIER, JR.,
> *Circuit Judges.*

_____

SOLANGE KATERINE BALDIVIEZO
CASTRO, AJOY PODDAR, A.I.P.B.,
> *Petitioners*,

> v.                                                    **24-667**
>                                                        **NAC**

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

**FOR PETITIONERS:** Dev B. Viswanath, The Banad Law Offices, P.C., New York, NY.

**FOR RESPONDENT:** Brian Boynton, Principal Deputy Assistant Attorney General; Brianne Whelan Cohen, Senior Litigation Counsel; Christina R. Zeidan, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioners Solange Katerine Baldiviezo Castro, her husband Ajoy Poddar, and their minor daughter, all citizens of Bolivia,[1] seek review of a February 9, 2024, decision of the BIA affirming an August 23, 2023, decision of an Immigration Judge ("IJ") denying Baldiviezo Castro's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").[2] *In re*

---

[1] Poddar is also a native and citizen of Bangladesh. Petitioners have not challenged the agency's decision to order removal to Bangladesh as an alternative or to deny withholding of removal as to Bangladesh. We note that the IJ's decision is unclear as to whether that alternative order applies to all petitioners or only to Poddar. *See* Certified Administrative Record at 171, 173, 179.

[2] We principally refer to Baldiviezo Castro because her husband and child are derivative beneficiaries of her asylum claim and did not file independent applications.

*Baldiviezo Castro*, Nos. A 246 757 828/829/830 (B.I.A. Feb. 9, 2024), *aff'g* Nos. A 246 757 828/829/830 (Immig. Ct. N.Y. City). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as modified by the BIA, i.e., minus the grounds for denying asylum and withholding of removal that the BIA declined to reach. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005). We review the agency's "legal conclusions *de novo*, and its factual findings . . . under the substantial evidence standard." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) (quotation marks omitted). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

**A. Asylum and Withholding of Removal**

To establish eligibility for asylum and withholding of removal, "the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." *Id.* § 1158(b)(1)(B)(i); *see also id.* § 1231(b)(3)(A); *Quituizaca v. Garland*, 52 F.4th 103, 105–06 (2d Cir. 2022) ("one central reason" standard applies to both asylum and withholding of removal). General crime

3

and violence in a country is not a ground for asylum and withholding of removal. *See Melgar de Torres v. Reno*, 191 F. 3d 307, 313–14 (2d Cir. 1999). "The applicant must . . . show, through direct or circumstantial evidence, that the persecutor's motive to persecute arises from [a protected ground]." *Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 (2d Cir. 2005).

Baldiviezo Castro alleged that she and her husband borrowed money for their business, the lender turned out to be associated with a cartel, and he and his associates repeatedly assaulted and threatened them when they failed to comply with demands for money. Substantial evidence supports the agency's conclusion that she failed to demonstrate a nexus between this harm and a protected ground.[3] *See Edimo-Doualla v. Gonzales*, 464 F.3d 276, 282 (2d Cir. 2006) (reviewing nexus determination for substantial evidence).

Baldiviezo Castro has abandoned review of her claim that she was or would be targeted because she is a Christian married to a Hindu because she does not

---

[3] To the extent that Baldiviezo Castro argues that there was necessarily a contradiction in finding her claim credible and sufficiently corroborated, but insufficient to satisfy her burden, she is incorrect: the agency may find testimony credible but "still decide that the testimony falls short of satisfying the applicant's burden . . . because it does not include 'specific facts sufficient to demonstrate that the applicant is a refugee.'" *Pinel-Gomez v. Garland*, 52 F.4th 523, 529–30 (2d Cir. 2022) (quoting 8 U.S.C. § 1158(b)(1)(B)(ii)).

4

mention that claim in her brief. *See Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("We consider abandoned any claims not adequately presented in the appellant's brief, and an appellant's failure to make legal or factual arguments constitutes abandonment." (quotation marks omitted)). Nor does the record compel a conclusion that religion was a central reason for her harm: Baldiviezo Castro alleged that one of her lender's associates who collected loan payments asked her why she married someone from a different religion; but he approached her to collect money, and she did not allege additional facts suggesting that any threats or violence stemmed from antipathy toward her (or her husband's) religion. *See Quituizaca*, 52 F.4th at 114–16 (record did not compel the conclusion that a protected ground was "one central reason" for gang abuse when circumstances suggested that the gang was motivated by ordinary criminal incentives); *Matter of Acosta*, 19 I. & N. Dec. 211, 222 (B.I.A. 1985) (defining persecution as harm inflicted to "punish" a person "for possessing a belief or characteristic a persecutor sought to overcome").

Baldiviezo Castro also has not articulated a challenge to the agency's reasoning that even if her proposed particular social groups—related to borrowing money from gangs and resisting gang recruitment and abuse—were cognizable,

she failed to establish the required nexus. *See Debique*, 58 F.4th at 684; *see also Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."). In any event, substantial evidence supports the agency's conclusion that the motive of the lender and his associates was financial, and Baldiviezo Castro did not allege facts suggesting that they expressed an antipathy toward members of her proposed groups that was distinguishable from the ordinary criminal motives to extract money and assert authority. *See Quituizaca*, 52 F.4th at 114–16; *Matter of Acosta*, 19 I. & N. Dec. at 222; *cf. Garcia-Aranda v. Garland*, 53 F.4th 752, 758 (2d Cir. 2022) ("perceived ability to pay" extortion is not a protected ground for asylum and withholding); *Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007) ("When the harm visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group' within the meaning of the INA.").

**B.    CAT Relief**

A CAT applicant "bears the burden of proving" that she "more likely than not would be tortured by, or with the acquiescence of, government officials acting

6

in an official capacity." *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 592 (2d Cir. 2021); *see* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7); *see Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004) ("[T]orture requires only that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it.").

Baldiviezo Castro did not allege a fear of torture by government officials, but rather that the government would not protect her from abuse by private actors. Substantial evidence supports the agency's conclusion that she failed to demonstrate that the Bolivian government is more likely than not to acquiesce to her torture. *See Hui Lin Huang v. Holder*, 677 F.3d 130, 134 (2d Cir. 2012) (holding that "[a] determination of what will occur in the future and the degree of likelihood of the occurrence has been regularly regarded as fact-finding"). Baldiviezo Castro was attacked the day after filing a police complaint, but thereafter, when neighbors called the police because her abusers found her and fired a gun, the police responded and her abusers fled; although there is no

evidence that the police took further action in response to that incident, Baldiviezo Castro had declined to file a complaint, and country conditions evidence reflects widespread corruption and a limited capacity to combat organized crime, but also that the government has taken steps to reduce this type of violence. Considered as a whole, this record does not compel the conclusion that the government will have advance knowledge of (or be willfully blind to) an intent to torture Baldiviezo Castro and decline to intervene. *See* 8 C.F.R. § 1208.18(a)(7); *Khouzam*, 361 F.3d at 171; *see also Quintanilla-Mejia*, 3 F.4th at 593–94 ("[S]ubstantial evidence review does not contemplate any judicial reweighing of evidence. Rather, it requires us to ask only whether record evidence compelled . . . [a] finding different from that reached by the agency.").

**C. Due Process**

Baldiviezo Castro asserts there was a due process violation, but as the Government argues, she did not exhaust a due process claim before the BIA. *See Vera Punin v. Garland*, 108 F.4th 114, 123–24 (2d Cir. 2024) ("[W]hen an argument made to this Court cannot be closely matched up with a specific argument made to the BIA, it has not been properly exhausted and we cannot hear it."); *Ud Din v. Garland*, 72 F.4th 411, 419–20 & n.2 (2d Cir. 2023) (reiterating that issue exhaustion

8

is mandatory where the Government raises it).   Moreover, except for disagreeing with the outcome of her case, she does not explain how the agency deprived her of a fair hearing.   *See Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007) (explaining that a petitioner may establish a due process violation by showing "that she was denied a full and fair opportunity to present her claims or that the IJ or BIA otherwise deprived her of fundamental fairness" (quotation marks omitted)).

For the foregoing reasons, the petition for review is DENIED.   All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court
